IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ELIZABETH SWARTZ, | CASE NO. 3:24-CV-02196-DAC |
| Plaintiff, | MAGISTRATE JUDGE DARRELL A. CLAY |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Elizabeth Swartz challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Dec. 18, 2024). The parties then consented to my exercising jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #6). For the reasons below, I **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Ms. Swartz applied for DIB on November 7, 2022, alleging she became disabled on May 19, 2022 due to panic disorder, anxiety, major depression, hypothyroidism, chronic pain, and migraines. (Tr. 155, 182). The claim was denied initially and on reconsideration (Tr. 71, 102). Ms. Swartz then requested a hearing before an Administrative Law Judge. (Tr. 105). On August 1, 2023, Ms. Swartz (represented by counsel) and a vocational expert (VE) testified before an ALJ, following which, the ALJ determined Ms. Swartz was not disabled. (Tr. 17-38, 46-69). On October

1

25, 2024, the Appeals Council denied Ms. Swartz's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; *see also* 20 C.F.R. § 404.984(b)(2)). Ms. Swartz timely filed this action on December 17, 2024. (ECF #1).

FACTUAL BACKGROUND

## I.      Personal and Vocational Evidence

Ms. Swartz was 36 years old on her alleged onset date and 38 years old at the hearing. (*See* Tr. 71). She has a bachelor's degree in both biology and chemistry and master's degree in nursing. (*See* Tr. 51, 1738). She has past relevant work experience as a registered nurse and as a waitress. (Tr. 52, 64).

## II.     Relevant Medical Evidence

Ms. Swartz is diagnosed with anxiety, panic attacks, and depression as well as chronic back pain and migraines (*see* Tr. 456-57) and fibromyalgia (Tr. 1745). From May through November 2022, Ms. Swartz received medication treatment for her anxiety, panic, and depression, which needed regular adjustment. (*See* Tr. 447-48, 444, 431-32, 402). She also began therapy that summer. (Tr. 809-16). She described feeling angry, stressed, unable to focus, frustrated, irritable and anxious as well as guilty, sad, apathetic, and tearful. (Tr. 1815).

Over 2022 and 2023, Ms. Swartz received regular treatment about every two weeks. By December 2022, she reported no improvement in her symptoms from her medications. (Tr. 1816). Over the next few months, Ms. Swartz still experienced symptoms despite adjustments including decreasing one medication, later increasing it, then decreasing it again, and trialing others. (*See* Tr. 1812, 1808, 1805, 1801-02, 1799, 1793, 1790). In February 2023, she described increasing stressors in her life and while doing so she clutched her chest and stated she was having a panic attack. (Tr. 1798). According to treating provider, the episode lasted less than a minute before Ms.

2

Swartz calmed down, answered her cell phone to address a medical appointment, and continued the counseling session without incident. (*Id.*). By April, she had success in controlling her anxiety with a new medication (Tr. 1786) but by the end of the month felt worse depressive symptoms (Tr. 1783). In May she had brief suicidal ideation after an argument and called the crisis line. (Tr. 1780). Though in May, she also reported she was pleased with her medications (*id.*) and repeated that in June (Tr. 1777), in July, she reported her anxiety worsened, possibly caused by an upcoming move, though she reported having coping mechanisms and medications to help calm her. (Tr. 1774). After the move, her anxiety worsened even more, so her medication was increased. (Tr. 1771-72). Her anxiety further worsened in August 2023, so she was prescribed a new medication. (Tr. 1768-69). By September, she reported it was partially effective. (Tr. 1765-66). In October, her medications were changed because Ms. Swartz was considering having another child. (Tr. 1762-63). The next month (four days before the administrative hearing), she reported feeling so depressed she could not get out of bed, impatient, short-tempered, unmotivated, and unable to concentrate; as a result, her new medications were increased. (Tr. 1759-60).

Ms. Swartz experiences chronic lower back pain. (Tr. 453). Imaging taken in 2021 of Ms. Swartz's spine revealed "mild right-sided neural foraminal narrowing at C4-C5 and 6mm left-side neural foraminal cyst at C7-T1, possibly perineural cyst." (Tr. 1587). She received medial branch block injections to relieve her back pain in May and June 2022. (Tr. 454-55, 442-43). Ms. Swartz underwent radiofrequency ablation twice in September 2022 to relieve her back pain. (Tr. 428-29, 425-26). She reported the procedures resulted in 60% relief of her pain and improved her activity. (Tr. 854). Still, they did not fully resolve her pain and so Ms. Swartz was prescribed a TENS unit (Tr. 420, 423) but it did not change her pain (Tr. 854). By December 2022, Ms. Swartz described

her pain as mild, aching, and persisting despite many forms of treatment. (*Id.*). In January 2023, she underwent epidural steroid injection to relieve her back pain. (Tr. 845-46). At a follow-up visit in February, she reported the treatment provided moderate relief (Tr. 828-29) and rated the severity at 3 of 10, down from 4 of 10 two months prior (*Contrast* Tr. 829 *with* Tr. 854).

On November 27, 2023 (two days before the administrative hearing), Ms. Swartz presented on referral a rheumatologist for treatment of fibromyalgia. (Tr. 1745-47). She described generalized pain that is worse in her lower back and persisted through treatment. (Tr. 1745). She reported epidural steroid injections were successful but too painful to continue and radiofrequency ablation treatment was unsuccessful. (*Id.*; *see also* Tr. 845-46, 425-29). Based on her descriptions, Ms. Swartz was diagnosed with fibromyalgia and prescribed medication. (Tr. 1745).

Ms. Swartz experiences migraines around three-to-four times a week and described them with occasional aura, pounding, throbbing, light and sound sensitivity, nausea, and vomiting. (Tr. 436). She received prophylactic and abortive medication for her migraines. (Tr. 435-36). While the medication "slightly improved" her condition, the abortive medication needed an hour to take effect, and the prophylactic medication caused gastrointestinal side effects (*see* Tr. 407-08) and so required adjustment (*see* Tr. 403). By 2023, her medications had not decreased her headache frequency. (Tr. 838).

## III.    Relevant Opinion Evidence

On December 2, 2023, Latrice Waddell, M.S.N., Ms. Swartz's primary care provider, completed a Social Security Administration form assessing Ms. Swartz's ability to perform work-related activities despite her impairments. (Tr. 1821-23). Nurse Waddell opined Ms. Swartz had marked limitations in her ability to make judgments on simple and complex work-related decisions and mild limitations in her ability to understand, remember, and carry out complex instructions.

4

(Tr. 1821). Nurse Waddell also opined Ms. Swartz was moderately limited in her ability to interact appropriately with the public, supervisors, and co-workers and extremely limited in her ability to respond appropriately to usual work situations and to changes in her routine work setting. (Tr. 1822).

On January 3, 2023, state agency psychological consultant Jamie Lai evaluated Ms. Swartz's medical records as part of the initial evaluation of her disability application. (Tr. 76-78). She opined Ms. Swartz could perform simple and complex routine tasks in a work setting without strict deadlines or production quotas and tolerate the stress of those tasks, though her stress tolerance is reduced. (Tr. 77). The consultant also opined Ms. Swartz could adapt to occasional minor changes, but any major changes should be gradually implemented to allow sufficient time to adjust. (*Id.*). The consultant opined Ms. Swartz could engage in brief superficial interactions with coworkers, supervisors, and the public. (*Id.*). On reconsideration, state agency psychological consultant David Dietz, Ph.D., reviewed additional medical records and added a moderate limitation in Ms. Swartz's ability to get along with others without distracting them or exhibiting behavioral extremes (*compare* Tr. 77 *with* Tr. 87) but otherwise affirmed the opinions. (Tr. 86-88).

## IV. Relevant Testimonial Evidence

Ms. Swartz explains she cannot work primarily because of her mental health. (Tr. 53). She experiences panic attacks and mood swings at work that removed her confidence and ability to make life-altering decisions as a registered nurse in the intensive-care unit. (*See id.*). Her decision-making difficulties carry over to her everyday life. (Tr. 53, 61). She also struggles to stay focused, on-task, and even awake. (Tr. 53). Her anxiety interrupts her while she is working, such as while she cooks; for example, her anxiety will flare up before a timer sounds. (Tr. 57). She also has depression that on the worst days prevents her from going into work. (Tr. 55).

Ms. Swartz also has pain in her back and knees and fibromyalgia that causes pain throughout her body. (Tr. 54). She rates her baseline pain as around 4 to 7 out of 10. (*Id.*). Despite the pain, she can force herself to stand for as long as needed and estimates she can walk 500 feet at most without pain. (*Id.*). How long she can sit depends on her level of back pain and whether it shoots down her legs. (Tr. 55-56). Her knee pain makes standing more difficult. (Tr. 56). As an example of her other tasks in daily life, she explained she is in serious pain when she pulls milk from the refrigerator or picks up her children. (Tr. 54). Because of that pain, she avoids those tasks where she can but must still do them. (*Id.*). Her pain also makes it impossible to pick up things from the floor, sweep, vacuum, or mop. (Tr. 54-55, 58). She also has pain in her hands though she can work through it. (Tr. 55). She estimated she lifted at most 150 pounds as a nurse and 35 pounds as a waitress. (Tr. 52). She limits herself to lifting 25 pounds. (Tr. 55).

Though she has a license, Ms. Swartz does not drive because she gets distracted, nervous, and stressed in traffic or getting to places on time. (Tr. 51). She stopped going to church due to the anxiety from the schedule of getting ready, heading to church, and services ending. (Tr. 59).

Her anxiety, and the medications she takes to control it, interrupt her sleep. (Tr. 56). The same issues also prevent her from napping. (*Id.*). She estimates sleeping five-to-seven hours if all the interrupted periods are totaled. (*See id.*). Some days she cannot get out of bed at all. (*Id.*).

Ms. Swartz experiences migraines about three-to-four times a week. (Tr. 59-60). Her medication takes about an hour to take effect. (Tr. 60). During that time, she lies down in bed and is nauseous and light sensitive. (*Id.*).

The ALJ posed to the VE a hypothetical person with Ms. Swartz's age, education, and experience but limited to: (1) light exertional level; (2) no climbing ladders, ropes, or scaffolds; (3)

frequently climbing ramps and stairs; (4) frequently balancing; (5) occasionally stooping, kneeling, crouching, and crawling; (6) frequently operate foot controls; (7) frequently reaching, handling, and fingering; (8) no exposure to moving mechanical parts, commercial driving, and high exposed places; (9) understanding, remembering, and carrying out gradually implemented simple and/or detailed (but not complex) instructions; (10) no production-rate or assembly-line work nor hourly quotas; (11) simple work-related decisions with only occasional changes in a routine work setting; (12) occasional interaction with supervisors; and (13) occasional brief and superficial interaction with coworkers and the general public. (Tr. 64-65). The VE opined such a person could not perform Ms. Swartz's past work. (Tr. 65).

The ALJ then made three changes to the hypothetical person: (1) the person is limited to the sedentary (instead of light) exertional level, (2) the person must have a sit/stand option, and (3) the person can be on-task for at most 90% of the workday. (Tr. 66). The VE opined that such a person could work as a packer, assembler, and inspector. (Tr. 66). The VE cited that there were approximately 4,200 packer positions, 1,500 assembler positions, and 1,800 inspector positions "within our national economy." (Tr. 66-67).

Finally, the VE testified that if the person is off task more than 15% of the workday or absent for two or more days a month, then the person could not secure competitive employment. (Tr. 67).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months."

20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—

to determine if a claimant is disabled:

1.   Was claimant engaged in a substantial gainful activity?

2.   Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.   Does the severe impairment meet one of the listed impairments?

4.   What is claimant's residual functional capacity and can claimant perform past relevant work?

5.   Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One

through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts

to the Commissioner at Step Five. *Id.* Only if a claimant satisfies each element of the analysis,

including inability to do other work, and meets the duration requirements, is she determined to be

disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Swartz had not engaged in substantial gainful

activity since her disability date. (Tr. 19). At Step Two, the ALJ identified the following severe

impairments:

Anxiety; panic disorder; major depressive disorder; bipolar disorder; obesity; migraines/headaches; fibromyalgia; lateral recess stenosis and moderate bilateral foraminal stenosis at L5-S1 and annular disc bulge at L4-L5; degenerative disc disease of the cervical spine with mild right-sided neural foraminal narrowing, left side neural foraminal cyst, and right sided sciatica.

(Tr. 19). At Step Three, the ALJ found Ms. Swartz's impairments did not meet the requirements

of, or were medically equivalent to, a listed impairment. (Tr. 20-26).

At Step Four, the ALJ determined Ms. Swartz's RFC as follows:

Is able to sit or stand alternating positions for one or two minutes in the immediate
vicinity of the workstation, no more frequently than every 30 minutes, while
remaining on task for at least 90% of the work period. Postural limitations of no
climbing of ladders, ropes, or scaffolds; frequent climbing of ramps and stairs;
frequent balancing; and occasional stooping, kneeling, crouching, and crawling.
Manipulative limitations of frequent use of the bilateral upper extremities for
reaching, handling, and fingering. Frequent use of the bilateral lower extremities for
operation of foot controls. Environmental limitations to avoid all exposure to
moving mechanical parts, commercial driving, and high exposed places. Can
understand, remember, and carry out gradually implemented simple and or detailed
but not complex instruction for work not requiring a specific production rate, such
as assembly line work, nor work requiring hourly quotas. Capable of using judgment
to make simple work-related decisions, with occasional changes in a routine work
setting. Capable of occasional interaction with supervisors. Occasional, brief, and
superficial interactions with the general public and coworkers. Superficial defined as,
able to be in proximity of others, able to exchange greetings, and able to engage in
discussions that do not require persuasion or involve tandem tasks that extend
beyond a 30-day training period.

(Tr. 26) (cleaned up). The ALJ then found Ms. Swartz could not perform her past relevant work as

a waitress and registered nurse. (Tr. 36). At Step Five, the ALJ found Ms. Swartz could perform

other work in the national economy such as a packer, assembler, or inspector. (Tr. 37). Thus, the

ALJ concluded Ms. Swartz was not disabled. (*Id.*).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the

correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's

findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters*, 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its

own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Swartz raises three issues: (1) the ALJ erred at Step Three by concluding she did not meet the criteria for Listings 12.04 and 12.06, (2) the ALJ erred at Step Five in finding there were other jobs in significant numbers in the national economy that Ms. Swartz could perform, and (3) the ALJ did not address the cumulative limitation of Ms. Swartz's physical and mental limitations. (*See* ECF #7 at PageID 1853).

## I.      Substantial evidence supports the ALJ's finding at Step Three that Ms. Swartz did not meet Listings 12.04 and 12.06

Ms. Swartz argues she meets the criteria for Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (ECF #7 at PageID 1864-67). The two listings each have three paragraphs, designated A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04, 12.06. Paragraphs B and C are identical for both listings. *See id.* The ALJ did not specifically address the criteria of Paragraph A, which outlines the medical criteria that must be present in the medical evidence (*see id.* §§ 12.04(A), 12.06(A)) but determined Ms. Swartz's mental impairments did not satisfy the criteria in Paragraphs B or C (Tr. 22-26).

11

The Paragraph B criteria require Ms. Swartz have an "extreme limitation" in one of four areas of mental functioning or a "marked limitation" in two of those areas. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04(B), 12.06(B). The four areas of mental functioning are the abilities to (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* To have a "marked" limitation in any area, the claimant's ability to function independently, appropriately, and effectively in that area must be "seriously limited." *Id.* § 12.00(F)(2)(d).

To satisfy Paragraph C, a claimant must show her mental disorder is "serious and persistent," which is defined with three criteria:

1. Having a medically documented history of the existence of the disorder over a period of at least two years;

2. The claimant relies upon medical treatment, mental health therapy, psychosocial supports, or highly structured settings to diminish the signs and symptoms of a mental disorder; and

3. Despite the diminished signs and symptoms, the claimant has only achieved marginal adjustment, meaning she has only a minimal capacity to adapt to changes in her environment or new demands of daily life.

*Id.* §§ 12.04(C), 12.06(C).

First, Ms. Swartz argues that under "the Sixth Circuit's decision in *Allen v. Califano*, [613 F.2d 139, 145 (6th Cir. 1980)] the burden of proof has been shifted to the Defendant because Claimant has made a prima facie case of disability that she cannot return to her prior work." (ECF #7 at PageID 1863). This is incorrect. The Commissioner has burden of proof *only* for Step Five of the sequential analysis. *See Allen*, 613 F.2d at 145 ("Once, however, a prima facia case that claimant cannot perform her usual work is made, the burden shifts to the Secretary *to show that there is work in the national economy which she can perform*.") (emphasis added). At Step

12

Three, the claimant has the burden to prove she meets or medically equals a listed impairment. *Walters*, 127 F.3d at 529 (claimant has the burden of proof at Steps One through Four). That the Commissioner may have the burden of proof at Step Five does not retroactively change the claimant's burden of proof at Step Three. Nor does the Commissioner's burden at Step Five change the standard of review here.

Next, Ms. Swartz argues her impairments meet the criteria of Listings 12.04 and 12.06. (ECF #7 at PageID 1863-67; ECF #10 at PageID 1916-21). She points to opinion evidence that she has marked limitations in two areas of mental functioning and an extreme limitation in one area. (ECF #10 at PageID 1918) (citing Tr. 1821-23). She also cites medical evidence documenting her depressed mood, diminished interest, sleep disturbances, decreased energy, panic attacks, mood swings, feelings of guilt and worthlessness, difficulty concentrating, feeling overwhelmed, an incident of suicidal ideation, decision paralysis, and anger. (ECF #7 at PageID 1864-67).

For Step Three, the ALJ concluded:

> Overall, while the claimant has tried different combinations of medication, the claimant's treatment records indicate that her medications ha[ve] been effective in reducing her mental health symptoms. Throughout 2023 and with medication, the claimant has exhibited no delusions, her thought process was goal directed, she denied suicidal and homicidal ideations, she denied visual or audio hallucinations, she was not responding to any internal stimuli, she was fully oriented, her attention and concentration were good, her intelligence appeared average, and her insight and judgment were fair or good. This suggests that while the claimant has some mental health limitations, she has no marked or extreme limitations.

> Overall, the evidence detailed above supports that the claimant has no more than mild limitation in understanding, remembering, and applying information and no more than moderate limitations in interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing oneself.

> * * *

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

13

> There is no evidence that your mental disorder is "serious and persistent" and that you are unable to adapt to a marginal adjustment, that is, you are able to adapt to changes in your environment or to demands that are not already part of your daily life.

(Tr. 25-26) (citation omitted).

Substantial evidence supports the ALJ's conclusions. For each area of mental functioning, the ALJ analyzed Ms. Swartz's adult function report, mental status examinations, and therapy and treatment notes. (*See* Tr. 21-25). The function report stated Ms. Swartz needed reminders to take medications but not for other personal needs, can perform household chores, care for her children, drive her children to school, handle money, and shop in-store and online. (Tr. 170-73). Ms. Swartz's monthly mental status examinations showed intact memory, cognitive function, attention/concentration, intelligence, and insight and judgment. (Tr. 458, 454, 451, 442, 439-40, 415-16, 405, 842, 835-36, 1816, 1812, 1809, 1806, 1802, 1799, 1796, 1793, 1790, 1787, 1784, 1781, 1778, 1772, 1769, 1766, 1763, 1760) (ordered chronologically). Her medical records indicated her anxiety medications required adjustment, but her other medications were generally effective. (*See* Tr. 1777-78, 1774-75 (anxiety medication increased), 1768-69 (added new anxiety medication) 1765-66 (medications steady), 1762-63 (medication change for planned pregnancy), 1759-60 (medications steady)) (ordered chronologically). These records are substantial evidence in support of the ALJ's findings. *See, e.g., Pierce v. Comm'r of Soc. Sec.*, No. 5:20-cv-1108, 2021 WL 1725062, at *13 (N.D. Ohio Apr. 16, 2021) (finding substantial evidence at Step Three from reliance on counseling and treatment records, mental status examinations, and the claimant's function report), *report and recommendation adopted,* 2021 WL 1723183 (N.D. Ohio Apr. 30, 2021).

Although Ms. Swartz can point to substantial evidence supporting her conclusion (*i.e.,* that she has marked limitations in two areas of mental functioning and an extreme limitation in one

area), this does not entitle her to remand. Instead, she must show substantial evidence does not support the ALJ's conclusions. *Jones*, 336 F.3d at 477. To show lack of substantial evidence, Ms. Swartz must do more than "point[] to evidence of the record that supports her position." *Greene ex rel. Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Ms. Swartz must demonstrate "there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Id.* The existence of evidence supporting a claimant's position does not prevent an ALJ from properly concluding that contrary evidence better characterized the claimant's limitations. *Pierce*, 2021 WL 1725062, at *13. And I may not reconsider or reweigh evidence already considered and weighed by the ALJ to arrive at a different result.

Ms. Swartz also argues that "more weight and consideration must be given to a treating physician's medical report." (ECF #7 at PageID 1863). She provides no further explanation and does not identify the opinion at issue in her main brief, though she explains in her reply that the ALJ's analysis of Nurse Waddell's opinion did not follow the legal standards, and a proper application would result in the opinion receiving "controlling weight."[1] (ECF #10 at PageID 1918-19).

---

[1]     Arguably, I could reject this argument as being raised for the first time in the reply brief. Ms. Swartz's single-sentence argument is conclusory and non-specific. Though there are citations to case law from the 1980s and the regulations, there is no discussion of the legal standards within those citations, the ALJ's analysis, or any evidence in support of it. (ECF #7 at PageID 1863). "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (cleaned up). The attempt to later develop the argument in the reply brief could be considered "too little, too late." *Henderson v. Comm'r of Soc. Sec.*, No. 1:19-cv-2913, 2020 WL 7481544, at *10 (N.D. Ohio Nov. 24, 2020), *report and recommendation*

The ALJ need not defer, nor give any specific evidentiary weight, to a medical opinion, is not bound by the "treating physician rule," and need not give a treating source controlling weight. 20 C.F.R. § 404.1520c(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Instead, the ALJ determines the persuasiveness of a medical source's opinion examining five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors the ALJ must consider. *Id.* § 404.1520c(b)(2); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-cv-36, 2021 WL 1169099, at *4 (S.D. Ohio Mar. 29, 2021). As a result, the ALJ must "*explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. *See* 20 C.F.R. § 404.1520c(b)(2) (emphasis added). If the ALJ discusses both of those factors and substantial evidence supports the discussion, the reviewing court may not disturb the ALJ's findings. *Paradinovich v. Comm'r of Soc. Sec.*, No. 1:20-cv-01888, 2021 WL 5994043, at *7

---

*adopted*, 2020 WL 7480666 (N.D. Ohio Dec. 18, 2020); *see also Colvin v. Comm'r of Soc. Sec.*, No. 4:18-cv-1249, 2019 WL 4743624, at *4, (N.D. Ohio Sept. 30, 2019) ("Plaintiff's attempts to more fully develop [his] argument in his reply brief comes too late, as it is well-established that new substantive issues cannot be raised in a reply brief.").

That said, a court has discretion to consider issues raised for the first time in a reply brief. *See Chapman v. Saul*, No. 1:18-cv-1616, 2019 WL 3773736, at *4 (N.D. Ohio Aug. 12, 2019) (collecting cases). Here, the Commissioner correctly inferred from the single-sentence argument that Ms. Swartz challenges the evaluation of Nurse Waddell's opinion and responded accordingly. (*See* ECF #9 at PageID 1908-09). Thus, the underlying principle that the Commissioner has notice of opposing arguments and the opportunity to respond to them appears intact. The Commissioner also does not argue that waiver should apply, despite arguing waiver elsewhere. (*See id.* at PageID 1911).

(N.D. Ohio Sept. 28, 2021), *report and recommendation adopted*, 2021 WL 5119354 (N.D. Ohio

Nov. 4, 2021). There is no requirement the ALJ discuss the source's treatment relationship with

the claimant.

> The ALJ evaluated Nurse Waddell's opinion as follows:
>
> On December 2, 2023, L. Waddell, MSN, opined that the claimant had extreme limitations in her ability to respond appropriately to usual work situations and to changes in a routine setting. It was further opined that the claimant had marked limitations in her ability to make judgments on simple work-related decisions and to make judgments on complex work-related restrictions. These opinions are not persuasive because they are consistent with the claimant's recent psychiatric notes. For example, while the claimant has tried different combinations of medication, the claimant's treatment records indicate that her medications ha[ve] been effective in reducing her mental health symptoms. Throughout 2023 and with medication, the claimant has exhibited no delusions, her thought process was goal directed, she denied suicidal and homicidal ideations, she denied visual or audio hallucinations, she was not responding to any internal stimuli, she was fully oriented, her attention and concentration were good, her intelligence appeared average, and her insight and judgment were fair or good. This suggests that while the claimant has some mental health limitations, she retains the ability to engage in substantial gainful activity. Likewise, it is not supported by the claimant's activities of daily living; the claimant acknowledged that she helps care for her children, she can use the toilet independently, she does not need reminders to care for her personal needs, she can do dishes and laundry, she drives her kids to school, she can go out alone, she shops in stores or using the computer, she can count change, and handle bank accounts, she spends time with others, she has no limits on her ability to walk, and she has never been fired from a job due to problems getting along with others. L. Waddell, MSN, also opined that the claimant had mild limitations in understanding, remembering, and carrying out complex instructions, moderate limitations in interacting appropriately with the public, supervisors, and coworkers, and that she was able to manage her own funds. These opinions are persuasive because they are consistent with the clinical findings detailed above and supported by the claimant's activities of daily livings detailed above.

(Tr. 35).

Here, the ALJ applied the supportability factor by explaining that the limitations Nurse

Waddell characterized as marked and extreme were unsupported by Ms. Swartz's self-reported

activities of daily living, such as caring for her young children, shopping, and attending to her

needs. (Tr. 35). As discussed above, substantial evidence supports these findings. (*See* Tr. 170-73). The ALJ also applied the consistency factor by finding the opinion "consistent with the claimant's recent psychiatric notes" (Tr. 35), though presumably the ALJ found the opinion was *not consistent* because the ALJ found the opinion unpersuasive and discussed contrary information. Reading the decision as a whole and with common sense, the ALJ applied the consistency factor by explaining the opinion was inconsistent with Ms. Swartz's psychiatric notes which "indicate that her medications ha[ve] been effective in reducing her mental health symptoms" and the findings of her mental-status examinations. (*Id.*). As discussed above, substantial evidence supports these findings. (*See, e.g.*, Tr. 1777-78, 1774-75, 1768-69, 1765-66, 1762-63, 1759-60).

Ms. Swartz argues that the other regulatory factors, primarily Nurse Waddell's relationship with Ms. Swartz, should take precedence and points to evidence in her favor. (*See* ECF #10 at PageID 1918-19). But she does not show how the ALJ's findings for the supportability and consistency factors *lack* substantial evidence. At most, she proves the factors went both ways. But consistency and supportability are the two most important factors and they both indicate the opinion is unpersuasive. Moreover, it falls to the ALJ to weigh the relative weight of each factor and decide an opinion's overall persuasiveness. Where substantial evidence supports the ALJ's findings, the court cannot re-weigh the factors to arrive at a different result.

Because substantial evidence supports the ALJ's findings at Step Three and the ALJ's evaluation of Nurse Waddell's opinion, I decline to order remand on this basis.

## II.      Substantial evidence supports the ALJ's determination that Ms. Swartz can perform other work in the national economy

Next, Ms. Swartz argues the ALJ erred in the Step Five conclusion that jobs exist in significant numbers in the national economy that she could perform. (ECF #7 at PageID 1868-71).

18

Because the ALJ found Ms. Swartz could no longer perform her past relevant work, the Commissioner had the burden of showing she could perform other work "which exists in the national economy." *See* 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* "Congress did not define 'significant' in the Social Security Act. Nor has the Commissioner defined the term by rule." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). Absent guidance, the Sixth Circuit has refused to enumerate a boundary between an insignificant and significant number of jobs and instead held ALJs must make the determination on a case-by-case basis. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988).

The ALJ determined there were significant numbers of jobs Ms. Swartz could transition to and cited three examples: 4,200 packer positions, 1,500 assembler positions, and 1,800 inspector positions for 7,500 jobs in total. (Tr. 38). Ms. Swartz argues the combined 7,500 positions in the national economy is not a significant number of jobs. She marshals primarily out-of-circuit caselaw with one case concluding 1,680 jobs nationwide was not a significant number. (ECF #7 at PageID 1869-70) (citing *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012)). The Commissioner points to in-circuit caselaw finding fewer than 7,500 jobs nationwide is a significant number. *See, e.g., Nejat v. Comm'r of Soc. Sec.*, 359 F.App'x 574, 578-79 (6th Cir. 2009) (2,000 assembly jobs nationwide is a significant number); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs).

Ms. Swartz replies that *Taskila* and *Nejat* conflated regional job numbers (where far fewer jobs could be a significant number) with national job numbers and discusses out-of-circuit caselaw that has rejected them on that basis. (*See* ECF #10 at PageID 1922-23) (discussing *Kathy H. v.*

19

*Comm'r of Soc. Sec.*, No. 5:19-cv-684, 2020 WL 3960846, at *16 (N.D.N.Y. July 13, 2020)). At least

one district court in the Sixth Circuit has found *Taskila* and *Nejat* unpersuasive on that basis. *See*

*Isaac v. Comm'r of Soc. Sec.*, No. 2:20-cv-11573, 2021 WL 4770122, at *7 (E.D. Mich. Apr. 29,

2021), *report and recommendation adopted*, No. 20-11573, 2021 WL 4167211 (E.D. Mich. Sept. 14,

2021). Indeed, the Sixth Circuit recently acknowledged the criticism of *Taskila* and *Nejat* in *Norris*

*v. Comm'r of Soc. Sec.*, 139 F.4th 541, 546 (6th Cir. 2025). There, the Sixth Circuit noted that

*Taskila* and *Nejat* remain published panel opinions that have not been overruled by the Supreme

Court or the en banc Sixth Circuit. *See id.* Even so, *Norris* held that *Taskila* and *Nejat* do not

dictate any one outcome because whether there is a significant number of jobs depends on the

"specific facts" of each case. *Id.*

Following the approach in *Norris*, I "evaluate if the specific facts of [Ms. Swartz's] case and

the national economy warrant reversal." *Id.* at 547. To show work that is available in significant

numbers, the Commissioner may rely on a VE's expert testimony about the number of available

jobs within the claimant's capabilities. *Id.* Here, when presented a hypothetical person of Ms.

Swartz's age, experience, and RFC, the VE opined that person could perform three representative

unskilled, sedentary jobs—packer, assembler, and inspector. (Tr. 66). The VE also testified that

there were approximately 4,200 packer positions, 1,500 assembler positions, and 1,800 inspector

positions "within our national economy." (Tr. 66-67). Based on that testimony, the ALJ found Ms.

Swartz was "capable of making a successful adjustment to other work that existed in significant

numbers in the national economy." (Tr. 38).

Ms. Swartz does not challenge the reliability of the VE's testimony, instead arguing the

three jobs do not amount to a significant number. Even if I might decide the matter differently, I

20

must affirm "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Here, the ALJ properly made a case-by-case determination: the opinion discussed the VE's testimony and the jobs available to a person with Ms. Swartz's functional limitations, concluding Ms. Swartz could perform other work that exists in the national economy. (*See* Tr. 37-38). The ALJ then verified the information was consistent with the Dictionary of Occupational Titles and, where it was not, the ALJ obtained reasonable explanations for the discrepancies. (*Id.*).

Next, Ms. Swartz argues that 20 C.F.R. § 404.1566(b) requires the Commissioner must also show the jobs are not isolated jobs found only outside the claimant's region and cites in support *Bragg v. Sullivan*, No. 91-cv-1522, 1992 WL 278202, at *5 (N.D. Ohio Aug. 6, 1992). (ECF #7 at PageID 1870-71). In *Bragg*, the court reversed the ALJ because "[a]s the court reads the law, for the Secretary to show that work exists 'in several regions of the country' he must show that such work is not comprised merely of 'isolated jobs that exist only in very limited numbers in relatively few locations outside of' the claimant's region" and there was no evidence in the record on such a finding. 1992 WL 278202, at *5. Here, there was no finding that the combined 7,500 positions in the national economy were not concentrated in isolated regions far from Ms. Swartz. Under *Bragg*, remand would be required for the ALJ to make such a finding.

*Bragg*'s reading of 20 C.F.R. § 404.1566(b) to require affirmative evidence that the cited nationwide jobs are not concentrated in isolated regions away from the claimant does not appear to have survived the test of time. The only case that cites *Bragg* rejects its approach. *See Putman v. Astrue*, No. 4:07-cv-63, 2009 WL 838155, at *3 (E.D. Tenn. Mar. 30, 2009). And Sixth Circuit cases decided after *Bragg* have accepted nationwide job numbers alone as sufficient. In *Harmon v.*

*Apfel*, 168 F.3d 289, (6th Cir. 1999), the Sixth Circuit held "[t]he [Social Security] Act, its legislative history and the regulations make it clear that the test is whether work exists in the national economy, not in plaintiff's neighborhood." *Id.* at 292. Then in *Nation v. Apfel*, 194 F.3d 1313 (table), 1999 WL 970302 (6th Cir. 1999), the Sixth Circuit clarified in an unreported case that based on *Harmon*, "[i]t is sufficient that the VE identified a significant number of jobs which exist in the national economy that Plaintiff could perform." *Id.* at *7-8. More recently, the Sixth Circuit held in *Moats* that "when a qualified vocational expert testifies that a person with the claimant's work experience and physical limitations could perform a significant number of jobs available in the national economy, the ALJ has a solid basis for denying disability benefits." 42 F.4th at 562. None of those cases suggested the Commissioner must come forward with affirmative evidence that the nationwide jobs are not concentrated in regions far from the claimant.

Finally, Ms. Swartz argues the ALJ's analysis lacked any of the *Hall* criteria. (ECF #7 at PageID 1871). But the Sixth Circuit later clarified *Hall* to foreclose this argument. In *Hall*, after holding the ALJ must make a case-by-case determination of whether jobs exist in significant numbers, the Sixth Circuit went on to list criteria that an ALJ could consider making that determination, "including the level of a claimant's disability, the reliability of the VE's testimony; and the reliability of the claimant's testimony, the distance the claimant is capable of travelling to engage in the assigned work, the isolated nature of the jobs, the types and availability of such work, and so on." 837 F.2d at 275. The Sixth Circuit further clarified that "these factors were suggestions only—the ALJ need not explicitly consider each factor." *Harmon*, 168 F.3d at 292; *see also Mitchell v. Sec'y of Health & Hum. Servs.*, 902 F.2d 33 (table), 1990 WL 55669, at *4 (6th Cir.

1990) ("the *Hall* court intended its stated factors as suggestions only."). As discussed above, the ALJ considered the VE's testimony about the number of jobs available to Ms. Swartz in the national economy. Although the ALJ did not discuss the *Hall* criteria while doing so, that was not in error.

I decline to order remand on this basis.

III.    **The ALJ analyzed the cumulative effect of Ms. Swartz's limitations as a whole.**

Finally, Ms. Swartz argues that "[t]he ALJ's decision fails to address the cumulative nature of Claimant's disabilities as a whole" and directs the court to her chronic lower back pain and chronic migraines. (ECF #7 at PageID 1871-73). An ALJ analysis of a claimant's combined impairments is sufficient "where the judge referred to a combination of impairments in deciding the claimant did not meet the listings and all of the claimant's impairments were discussed individually in the decision." *Austin v. Comm'r of Soc. Sec.*, 714 F.App'x 569, 575 (6th Cir. 2018) (quotation omitted). The ALJ did precisely that, first finding that Ms. Swartz's physical impairments did not meet the associated listings (*see* Tr. 20-21) and then finding "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06 and 12.15" (*see* Tr. 21). Then at Step Four, the ALJ expressly accommodated Ms. Swartz's lower back pain and migraines into the RFC:

> The undersigned has fully accommodated for the claimant's obesity; migraines/headaches; fibromyalgia; lateral recess stenosis and moderate bilateral foraminal stenosis at L5-S1 and annular disc bulge at L4-L5; and degenerative disc disease of the cervical spine with mild right-sided neural foraminal narrowing, left side neural foraminal cyst, and right sided sciatica by limiting her to sedentary work.

(Tr. 36). I thus conclude the ALJ has considered the combined effect of Ms. Swartz's impairments and decline to order remand on this basis.

23

CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I

**AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: September 18, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE